# EXHIBIT 1



Pension Benefit Guaranty Corporation
**PBGC** 1200 K Street, N.W., Washington, D.C. 20005-4026

DEC 23 1998

VIA FEDERAL EXPRESS

Edward R. Mackiewicz, Esq.
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

Dear Mr. Mackiewicz:

This letter is in response to your request for the opinion of the Pension Benefit Guaranty Corporation ("PBGC") on several issues arising under the provisions added by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1301 et seq. (1994 & Supp. II 1996).

Your principal question is whether a multiemployer pension plan may assess withdrawal liability against an employer based on the contribution history of two wholly-owned subsidiaries whose stock was sold to an entity that, at the time of the sale, was a member of the withdrawn employer's controlled group but at the time of the withdrawal no longer was.

Upon withdrawal from a multiemployer plan, the plan sponsor determines and collects withdrawal liability.[1] If the employer disputes the liability determination, the proper forum for resolution of the dispute is arbitration.[2] Therefore, PBGC will not express an opinion on the facts presented in your request; PBGC will, however, address the issues implicated by the facts presented to give general guidance on the meaning of relevant provisions of ERISA.

The facts as presented are complex, detailing a series of transactions between members of a controlled group and the subsequent breakup of that controlled group.[3] The salient facts, as we understand them, are as follows.

---

[1] ERISA § 4202, 29 U.S.C. § 1382.

[2] ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1).

[3] See Charts attached and numbered as Chart 1 through 5.

Company A and Company B were members of "a combined controlled group" through common shareholders. See generally 29 U.S.C. § 1301(b); 29 C.F.R. § 4001.3; Treas. Reg. § 1.414(b)-1, et seq. The Companies engaged in a series of transactions at the end of which they were no longer members of the same controlled group. Subsequently, the obligation of the controlled group that includes Company A to contribute to Fund Z permanently ceased.

At the beginning of the series of transactions, Company A had two wholly-owned subsidiaries, Company C and Company D. Company C had a wholly-owned subsidiary, Company F. Company D also had a wholly-owned subsidiary, Company G. All except Companies A and G were contributors to Fund Z. On December 31, 1995, Company C and Company D were merged into Company A and their operating assets simultaneously spun off to two newly-incorporated subsidiaries, Company H and Company I, with their nonoperating assets spun off to separate subsidiaries. Company H's and Company I's names were then changed to Company C and Company D, respectively.[4] And, you represent that they "retained" the obligation to contribute to Fund Z. After these transactions, Company F and Company G became direct subsidiaries of Company A.

Company B had a wholly-owned subsidiary, Company E, a contributing employer to Fund Z. In 1987, Company B merged into Company E, which continues to contribute to Fund Z.[5] On February 29, 1996, Company E bought the stock of Company D (formerly Company I) from Company A. In August of the same year, Company E bought the stock of Company C (formerly Company H) from Company A.[6] Later in that same month, the shareholders of Company A and Company E entered into a stock purchase agreement that resulted in the breakup of the Company A and Company E controlled group.

Company A's controlled group then experienced a "complete withdrawal" when, as a result of the negotiation of a new collective bargaining agreement, the last remaining entity in Company A's controlled group contributing to Fund Z, Company F, ceased to have an obligation to contribute to Fund Z. See generally PBGC Op. Ltr. 92-1 (March 30, 1992).

According to your request, Fund Z maintains that Company A is liable for withdrawal liability based in part on the contribution history of Companies C and D prior to their merger into Company A, on the theory that the liability "accrued" to Company A as a result of its ownership of Company C and Company D. Additionally, Fund Z maintains that, under state law, the 1995 reorganization and spinoff of Companies C and D into Companies H and I were not bona fide

---

[4] See Charts 2, 3 and 4.

[5] See Charts 1 and 2.

[6] See Chart 5.

2

corporate reorganizations and therefore cannot be considered a change in corporate structure as defined by ERISA.

An employer completely withdraws from a multiemployer plan when it (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan.[7]

Title IV of ERISA defines an "employer" as comprising all trades or businesses under common control.[8] Among other exceptions, an employer is not considered to have withdrawn from a plan solely because the employer ceases to exist because of "a change in corporate structure described in section 4069(b)," so long as there is no interruption of contributions or of obligations to contribute.[9] In that event, a successor or parent corporation or other entity resulting from the change is considered the original employer.[10]

The covered changes in corporate structure include the change of identity, form, or place of organization; the liquidation into a parent corporation; or merger, consolidation or division.[11] The sale of stock of a subsidiary to an unrelated party can be such a transaction. For example, withdrawal liability is not triggered for a controlled group of corporations where a wholly-owned subsidiary, a contributor to a multiemployer pension plan, continues to make contributions after it is spun off to shareholders of the parent corporation and is no longer a member of the controlled group.[12] Similarly, withdrawal liability is not triggered by the sale of a subsidiary when another member of the controlled group continues to contribute to the plan.[13] As ERISA is a federal statute, interpretation of ERISA §§ 4069(b) and 4218 is a matter of federal law, as is apparent from the referenced PBGC Opinion Letters.

---

[7] ERISA § 4203(a), 29 U.S.C. § 1383(a). An employer may also incur a partial withdrawal upon the occurrence of either a 70-percent contribution decline or a partial cessation of the contribution obligation. ERISA § 4205(a), 29 U.S.C. § 1385(a). You have not asked PBGC to address any partial withdrawal issues.

[8] ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).

[9] ERISA § 4218, 29 U.S.C. § 1398.

[10] Id.

[11] ERISA § 4069(b), 29 U.S.C. § 1369(b).

[12] PBGC Op. Ltr. 85-29 (December 5, 1985).

[13] PBGC Op. Ltrs. 92-1, 84-7 (December 20, 1984).

The principal question presented by your request is the effect the merger of Company C and Company D into the parent Company A had on the contribution histories of Companies C and D when their operations were "simultaneously" spun off into Company H and Company I (which later became Company C and Company D, respectively), and Company C and Company D were later purchased by Company E. We believe that the question is governed by the principles set forth in Opinion Letter 92-1. As PBGC stated there:

> in a situation such as this where multiple entities in the same controlled group contribute to the same plan, and some, but not all, of the controlled group members who contribute to the plan are the subject of a change described by Section 4218 of ERISA, neither of the successors clearly should inherit the entire contribution history of the original employer. In such a case, it is the PBGC's opinion that the contribution history of the original employer must be fully apportioned among the successor employers. The plan should make the allocation in a reasonable manner. For example, in the absence of a history of large transfers of operations or covered employees between members of the controlled group, or other unusual factors, the plan may allocate that contribution history in proportion to the contribution histories of the controlled group members that have an obligation to contribute and covered operations immediately before the Section 4218 transaction . . . .

PBGC Op. Ltr. 92-1, at 7-8.

In the situation you have presented, the application of Opinion Letter 92-1 may not be entirely straightforward. The transactions in Opinion Letter 92-1 occurred either unilaterally or with an unrelated third entity. Here, the transactions occurred between and among members of the same controlled group. Nevertheless, as stated in Opinion Letter 92-1, the plan should make the allocation in a reasonable manner.[14]

Based on the facts presented, the following seem relevant to a determination of a reasonable allocation of the original employer's contribution history:

(1) all of the relevant transactions occurred prior to the breakup of the combined controlled group;

(2) the covered operations of Company C and Company D transferred to the spun-off entities and subsequently transferred in the stock sale to Company E;

---

[14] PBGC Op. Ltr. 92-1, at 8.

4

(3) apart from the operations of Company C and Company D, there is no indication in your presentation of any transfers of covered operations or employees within the controlled group; and

(4) Company A's controlled group obligation to contribute to the plan permanently ceased upon the end of Company F's obligation to contribute pursuant to a new collective bargaining agreement, which occurred after the controlled group breakup.

Finally, you should be aware that a transaction with a principal purpose to evade or avoid liability under Subtitle E of Title IV of ERISA would be disregarded and liability determined and collected without regard to the transaction.[15]

I hope this response is helpful to you. If you have any further questions, please do not hesitate to contact Rhonda Baird at (202) 326-4020.

Very truly yours,

James J. Keighley
General Counsel

---

[15] ERISA § 4212(c), 29 U.S.C. § 1392(c).

5

ATTACHMENTS

# 1984

Controlling Interest
and Effective
Control Held by
Five or
Fewer Individuals

Company
A

Company
B

Company
C

CONTRIBUTOR
TO FUND Z

Company
D

CONTRIBUTOR
TO FUND Z

Company
E

CONTRIBUTOR
TO FUND Z

Company
F

CONTRIBUTOR
TO FUND Z

Company
G

## CHART 1

# 1987



**CHART 2**

# December 31, 1995 Merger



**CHART 3**

## Effective January 1, 1996



**CHART 4**

# Effective August 9, 1996



**CHART 5**